## CIRCUIT COURT OF ROANOKE COUNTY

Walter Asbury Gold

   v.

Sandra Louise Sharpe Gold

November 10, 1983

Case No. (Chancery) 631-1983

By JUDGE KENNETH E. TRABUE

This Court has been requested to make a decree as to the maintenance and support of Mrs. Gold, as to the support of the minor children of the marriage, and as to the property of the parties, all as provided by Va. Code Ann. §§ 20-107.1, 20-107.2, and 20-107.3.

The bill of complaint brought by the husband was filed on November 9, 1982. On March 9, 1983, a decree of final divorce was entered, retaining the case on the docket for a determination of spousal support, child support, equitable distribution of property and attorneys' fees. Custody of the children was not an issue and was awarded to the wife with reasonable rights of visitation reserved unto the husband. The grounds for the final divorce were based upon the one-year separation rule. The case has been heard ore tenus and included several days of testimony by the parties and various certified public accountants and

lay witnesses. Each side has filed comprehensive briefs on the issues of equitable distribution. I have studied all of these briefs and have reviewed all of the authorities submitted by each side as well as numerous papers prepared by Arthur E. Smith of Roanoke, Betty A. Thompson of Arlington; Equitable Distribution Update, 2 The Va. Researcher 51 (Aug. 1983); Equitable Distribution Update, 2 The Va. Researcher 67 (Sept. 1983); the 1970 Uniform Marriage and Divorce Act; the report of the Joint Subcommittee studying Va. Code Ann. § 20-107 to the Governor and to the General Assembly of Virginia (House Document 21); an article appearing in the Baltimore Law Review, Volume 8, 1979, entitled "Legislation Property Disposition upon Divorce in Maryland: An Analysis of the New Statute"; and portions of the New York Domestic Relations Law, McKinney's Code §§ 234, 235 and 236 including the 1982 Practice Commentary by Scheinkman; and a paper appearing in Henderson, Hillinger, Glazer, Equitable Distribution: Virginia Code Section 20-107, 8 Va. B.A.J. (Fall 1982).

As each of you knows, much has been written upon what the new Virginia law is, what it is not and what it ought to be. Frankly, the more one studies the variations in the statutes from state to state and the differences of the interpretations between the states and within the courts of the same states, the more one recognizes that a review, on a case-by-case basis, is interesting and informative in understanding the subject matter as a whole, but it is not very helpful in deciding the specific issues under the evidence in the specific case. I mention this in advance as a caveat because the Court's opinion in this case is based solely upon the facts and expert opinions presented through the evidence, and the findings by this Court in this case might or might not be applicable elsewhere.

Background of the parties, the marriage, the children and the dissolution of the marriage. Dr. Gold is thirty-nine years of age (date of birth, August 24, 1944). Mrs. Gold is thirty-seven (date of birth, February 12, 1946). They met in Mooresville, North

Carolina, in 1960 and were married in 1968. They have two sons: Benjamin, born on May 6, 1975, and Daniel, born April 5, 1977. Shortly after the marriage, the parties moved to a Richmond apartment. Dr. Gold went to dental school at the Medical College of Virginia. He graduated in 1970 and then spent three years in oral surgery residency and completed that program in 1973. The parties moved to Roanoke in July of 1973 where Dr. Gold, with the help of Mrs. Gold, established a medical practice. Mrs. Gold is a college graduate with a degree in elementary education. Her certification has now expired, and her present intentions are to remain at home with the small children. She is in excellent health. He is in good health except that he has diabetes which is controlled with insulin injections, and he has early signs of Dupuytren's contracture disease in the palm of his hand, but these conditions are not now vocationally disabling.

Mrs. Gold was the primary breadwinner through dental school. Each came from modest backgrounds, and neither brought substantial material goods or wealth into the marriage. Except for a short time in 1970 when Mrs. Gold was pregnant (stillborn birth), she taught school from the beginning of the marriage through the first year in Roanoke in 1974 when she quit to have their firstborn child. Each of them contributed his and her respective time and talents toward the establishment of the dental practice and the borrowing of the money to establish a home and to set up the practice in Roanoke. From 1974 on, Dr. Gold was the sole breadwinner, but both parties contributed substantially to the raising of the children and the decorating and remodeling of the marital home in Hunting Hills which was built in 1979. The marriage began to disintegrate after the birth of the second son in 1977 when he commenced an affair outside of the marriage and when she, according to him, was not supportive enough in the social activities which he expected of her to enhance his referral oral surgery practice. In spite of the marital difficulties, it is clear from the evidence that his dental practice flourished, that he is an extraordinarily talented oral surgeon and that he made a series of sound finan-

cial decisions and investments which tended to maximize the standard of living and minimize the tax consequences of his income. Ultimately, however, the parties separated in March of 1980; and although some attempt of reconciliation occurred thereafter, cohabitation did not recur and the marriage ultimately dissolved. The Court finds that Mrs. Gold was not legally at fault in causing the dissolution of the marriage.

Va. Code Ann. § 20-107.3, "The Property of the Parties." Va. Code Ann. § 20-107.3(A) provides as follows:

> Upon decreeing the dissolution of the marriage, and also upon decreeing a divorce from the bond of matrimony, the court, . . . shall determine the legal title as between the parties, and the ownership and value of all real and personal property of the parties and shall consider which of such property is separate property and which is marital property.

The time of evaluation is not specifically determined by statute. Some authors have suggested the date of filing of the suit; others, the date of separation. The parties through their witnesses and evidence have suggested various dates for various properties and have not raised a substantial issue on this subject; so the Court's findings are based upon the values at the time indicated by the appraisers or at the end of Dr. Gold's last accounting year as fixed by the witnesses and exhibits.

I. Separate Property. Neither Dr. nor Mrs. Gold has separate property to be considered. Mrs. Gold brought an automobile and various personal property such as furniture into the marriage. Dr. Gold brought three shares of inherited stock into the marriage, but the separate properties of each were merged into marital property.

II. Marital Property. The Court finds that the

legal title, ownership and value of all marital real estate and personal property to be as follows:

A. Marital Property - Jointly Owned.

    1. Real Estate. Residence: 5265 Falcon Ridge Road, S.W., Roanoke County. This property is occupied by Mrs. Gold and the children as their principal residence. It is partitionable, and the fair market value as of August 1, 1983, is fixed at $185,000. The mortgage balance on December 30, 1982, was $88,007.36. The fair market value at the time of conveyance would have to be recalculated to take into consideration the change of market conditions, reduction of the mortgage balance, closing costs, real estate commissions, etc., if applicable.

    2. Tangible Personal Property.

        a. In possession of Mrs. Gold: furniture, fixtures, jewelry and other household items, $20,000;

        b. In possession of Dr. Gold: condominium furniture and fixtures, $5,000;
For a total of $25,000.

B. Marital Property - Legal Title in Dr. Gold.

    1. Real Estate. Condominium at 5260 Crossbow Circle, S.W. Parties have agreed upon a fair market value of $60,000. The mortgage balance as of December 31, 1982, was $52,170.

    2. Cash. Parties agree, $20,000.

    3. Loan Receivable. Parties agree, $11,500.

    4. Life Insurance according to Dr. Gold's testimony on June 15 was $1,000. However, the cash value according to his financial statement of December 31, 1982, was $3,500; and the Court fixes the amount to be $3,500.

5. The 1983 Oldsmobile in the wife's possession, $10,000.

6. Partnership interest in real estate ventures:

a. Golden Associates, one-half interest in an office building, $78,800.

b. Bridal Creek, $20,000. The value of this interest was intensely contested and controversial. It is clear, and the Court finds, that Bridal Creek is a highly leveraged, high-risk tax shelter. The evidence substantiates that the present "book" value in the investment is $24,500; realistically, its present fair market value must be reduced or discounted because of its limited marketability and tax implications.

7. Retirement Programs. Keogh fully vested, $27,803. Gold-Nussbaum, Ltd., retirement plan: allocated to Dr. Gold, $72,822; 50 percent vested, net present value of $36,411. Gold-Nussbaum, Ltd., profit-sharing plan: allocated to Dr. Gold, $67,795; 50 percent vested, net present value of $33,898. Total present value of all plans, $168,421, of which $98,112.23 is vested.

8. Clifford Trust. The Court finds that this irrevocable trust was established by Dr. Gold and Dr. Nussbaum for the benefit of their respective children and that it has no value for the purpose of establishing marital property for the granting of a monetary award. The corpus consists of business and trade personal property, principally dental tools and equipment and office furnishings, and there is no evidence from which present value of the corpus to Dr. Gold can be determined. It is speculative to say that upon termination of the trust the corpus will have any substantial remaining marketable value. This is not to say, however, that the tax sheltering of Dr. Gold's monthly payments to the trust for the benefit of his children is not proper evidence to be considered in establishing Dr. Gold's earnings and in fixing his earning capacity for the purpose of either spousal

support under Va. Code Ann. § 20-107.1 or child support under Va. Code Ann. § 20-107.2.

9. Stock value, professional corporation. The Court fixes the value of Dr. Gold's share of the professional corporation at $102,418.

Mrs. Gold's expert suggested the value of $295,000 and based this upon a capitalization of earnings' approach. This assumed a net income of $148,440 and applied a multiplier of 4 called the "capitalization rate" and fixed the value of the corporation at $593,760. Dr. Gold's share was one-half or $296,880 or rounded off to $296,000. The multiplier captures "goodwill."

Mr. Drunagel fixed the value of $89,808 without making any stated allowance for good will. He used a modified book value approach taking into consideration what a willing buyer would pay and a willing seller would accept.

Mr. Berry estimated Dr. Gold's share at between $67,500 and $75,000. He used an "assets plus liabilities and modified book value approach," comparing the values with recent sales.

a. Dental Degree and License. The value of Dr. Gold's dental license has been discussed but is really not a factor in this case. While it may be appropriate to fix a value for a license in terms of earning power in the first year or two of practice for a dissolved marriage, once the practice is established and a pattern of earnings and earning capacity becomes predictable, the license value, if any, is merged into the enhanced earning capacity which assumes the degree of the existence of a license by the Commonwealth to practice in the first place. In other words it would seem illogical to grant an award based upon a track record of enhanced earnings (those earnings which could not be made but for the degree and license in the first instance) and then add a multiplier or added lump sum for the degree and license itself. A degree and license is not property; it is personal to the

holder and cannot be bought or sold or pledged. The degree is an acknowledgment of educational accomplishment, and the license is a privilege by the state to practice a profession. Hence, it is not property which in my opinion is susceptible to evaluation under Va. Code Ann. § 20-107.3 and the facts of this particular case.

b. Goodwill. I think it is clear that a spouse's interest in a professional practice is marital property, and neither side in this case has suggested that Dr. Gold's stock interest in the professional corporation is not marital property subject to equitable distribution. The dispute is over "goodwill," whether it is property, whether it can exist in a professional corporate practice and if it is due consideration, how to value it. I have studied the University of Richmond Law Review article entitled "Valuation of Spousal Interest, etc.," and Dugan v. Dugan, 457 A.2d 1 (N.J. 1983), with great interest, the former because of the author's realistic approach with the problem of good will and the latter because of the exhaustive dissertation of the subject. Justice Story has defined goodwill as follows:

> [Goodwill is] [t]he advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it received from constant or habitual customers on account of its local position, or from celebrity or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices." J. Story, Commentaries on the Law of Partnerships § 99, at 170 (6th ed. 1868), quoted in Whittle v. Davie, 116 Va. 575 (1914).

In Wood v. Pender-Doxey, 151 Va. 706 (1928), Virginia Supreme Court has said

> Goodwill is one of those intangible assets of an established business difficult to describe and impossible of valuing with mathematical precision, but, with all, of very real existence and of substantial value.

There is little direction for a Virginia Circuit Court to follow in handling this subject. There are no Virginia Supreme Court cases reported as yet dealing with Va. Code Ann. § 20-107.3. The statute itself is silent.

There apparently are two approaches used by other courts. One line of cases accepts the proposition that goodwill is marital property and an asset subject to division. The second approach is that goodwill is not per se marital property but that it is the professional practice itself that constitutes marital property. Under the evidence in this case, the Court adopts the latter as appropriate and holds that Dr. Gold's professional practice itself constitutes marital property and is subject to evaluation for the purpose of distribution.

This is not to say that goodwill should not be considered as a factor in evaluating the practice. It should be when there is evidence to support it. However, goodwill can exist, and to ignore it is contrary to human experience, common sense and the holdings in the majority of jurisdictions and the evidence in this case. It is one factor, but not the only one, which is included in the ultimate evaluation of the worth of the practice.

The difficulty in the present case is in sifting through the testimony of three experts, two for Dr. Gold and one for Mrs. Gold, and arriving at a fair formulation for establishing the value of Dr. Gold's stock. The wife's expert, Sawyer, uses a formula (capitalization of earnings) approach. He arrives at a net income of $148,440, uses a multiplier of 4 for goodwill, arrives at $593,760 and divides by 2 to establish Dr. Gold's one-half interest and says his

share is $296,000. As described in 17 U. Rich. L. Rev. 383 (1983), at 397, the formula approach does suffer from several disadvantages:

> (1) [I]t is only appropriate where no better method of valuation is available; (2) expert witnesses are frequently unable to adequately explain its theoretical basis; (3) it is difficult to determine an average salary for similar services; (4) it is difficult to choose an appropriate multiplier; and (5) it can sometimes lead to unpredictable results.

These difficulties are apparent in this case, and in my opinion this formulation is arbitrary and leads to an impossible evaluation not based upon reason. It does not consider the difference between Dr. Gold's earnings in excess of other competing professionals. If the approach used had deducted the average earnings of others in the same field and then applied the multipliers, a more equitable result may have been reached. The evidence was that there are four or five persons of the same specialty practicing in Roanoke valley. Dr. Gold and Dr. Nussbaum (two of these dentists) have substantially equal incomes. There is no evidence as to whether the other competitors make more or less than Dr. Gold. If the better approach is grounded upon the assumption that the value of goodwill rests upon the excess of net earnings over and above a fair return of the net tangible assets (Rev. Rul. 59-60), then there is simply insufficient evidence in this case to use Mr. Sawyer's formulation as the sole correct approach to evaluating the practice. The fallacy is proved by the conclusion. It is simply obvious that no reasonable oral surgeon would pay nor could the goodwill portion of the practice demand $222,660 (the excess of one-half net income after application of the multiplier). If one had the talent to generate the income to pay such a purchase price, his own goodwill would be so great that he would not be likely to purchase someone else's.

On the other hand Drunagel and Berry say that "goodwill" simply cannot attach to a corporation

because a corporation cannot practice medicine. They have not therefore directly evaluated goodwill as a separate item in estimating the value of Dr. Gold's practice. I am of the opinion that the alternative evaluations' approaches by Berry (modified book value in comparison with recent sales) and Drunagel (modified book value approach with fair market value but assuming goodwill is personal in nature to the doctor) are more realistic and consistent with formulation and evaluation methods approved by many of the courts in the other jurisdictions. The Court accepts Drunagel's evaluation of $89,808 but adds back the tax consideration of $12,610 and establishes the value at $102,418 as the before-tax value of this portion of the marital property. Mr. Drunagel has been the financial consultant for the practice since its inception. He is eminently knowledgeable of the books and records, trust agreement, etc., of the corporation and Dr. Gold; and his conclusions, in my opinion, are consistent with the evidence. His evaluation considers a valid buy-sell agreement fixing Dr. Gold's share at $40,000 and the price of $45,000 offered to an associate for one-third of the practice (based upon a one-half share of $67,500). In comparing the Sawyer formula before application of the multiplier (net worth of Dr. Gold to be $74,220) with the value set by Drunagel, it seems apparent that whether the words are said or not, regardless of the expert, the inclusion of a consideration for goodwill is inherent in the valuation. I therefore find that this valuation recognizes the existence of goodwill and is loosely consistent with the definition of goodwill as adopted by the Virginia Supreme Court in Wood v. Pender-Doxey, supra.

Va. Code Ann. §§ 20-107.1 and 20-107.2, "Spousal Support and Child Support." The Court withholds decision as to the amount of spousal and child support which should be awarded until a lump-sum distribution has been fixed and the sources of other income which may become available to Mrs. Gold can be determined.

I wish to schedule a conference with counsel and if you are so advised with the tax advisers for the

respective parties to discuss and determine the following:

1. The fixing of a monetary award payable either in a lump sum or over a period of time in fixed amounts in favor of Mrs. Gold.

2. Consideration of the tax consequences of such award.

3. The mechanics of handling that portion of such award that may be attributable to future payments of pension or retirement benefits.

4. Fixing of child support and spousal support after consideration of the above.

5. Attorneys' fees.

6. Liquidity of the marital property.

7. Sketching of the final order.

8. Such other matters as may be appropriate to be raised by either side.

## SUMMARY

I. Marital Property titled or owned jointly by parties

| | |
|---|---|
| 1. Real Estate | $185,000 |
| 2. Personal Property | 25,000 |
| | $210,000 |

II. Marital Property titled with Dr. Gold

| | |
|---|---|
| 1. Real Estate | $ 7,830 |
| 2. Cash | 20,000 |
| 3. Loan Receivable | 11,500 |
| 4. Life Insurance Cash Value | 3,500 |

| | |
|---|---:|
| 5. Automobile | 10,000 |
| 6. Partnership Interest in Real Estate Ventures | |
|    a. Golden Associates (1/2 interest in office building) | 78,800 |
|    b. Bridal Creek | 20,000 |
| 7. Retirement, Pension, Profit-sharing | |
|    a. Keogh | 27,803 |
|    b. Gold-Nussbaum Pension (1/2 vested 36,411) | 72,822 |
|    c. Gold-Nussbaum Profit-sharing (1/2 vested 33,898) | 67,795 |
| 8. Gold-Nussbaum Trust | -0- |
| 9. Value of Dr. Gold's Professional Practice | 102,418 |
| | $422,468 |